**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0688n.06

Case No. 13-5848

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Sep 04, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GARY GAYLOR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| HAMILTON CROSSING CMBS, et al., | ) | TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; SARGUS, District Judge.[*]

SARGUS, District Judge. Plaintiff-Appellant, Gary Gaylor, a Georgia resident who suffers from multiple sclerosis and needs a cane or wheelchair for mobility, sued Defendant-Appellee, TRU RE I, LLC ("TRU"), operator of a Toys-R-Us, alleging that he encountered barriers on TRU's property in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"). The district court dismissed Gaylor's claim against TRU with prejudice for lack of subject matter jurisdiction, holding that Gaylor lacked standing because he failed to sufficiently allege an actual injury. The district court also denied Plaintiff's subsequent request for leave to amend on the grounds of undue delay, prejudice, and futility. On

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

appeal, Gaylor challenges the district court's dismissal of his claim against TRU and alternatively challenges the district court's denial of his request for leave to amend. Because we conclude that the district court erred in dismissing Plaintiff's claim against TRU, it is unnecessary to address his alternative argument that the district court erred in denying his subsequent request for leave to amend.

## I.

Gaylor's claims in this action arise from his alleged visits to the Hamilton Crossing Shopping Center in Chattanooga, Tennessee. Gaylor initiated this action in March 2012 against TRU and other owners and operators of stores located within the shopping center, alleging that he observed and encountered barriers to access during these visits that violate Title III of the ADA. Following a motion dismiss, Gaylor filed his First Amended Complaint ("FAC").

Gaylor's FAC, like his original complaint, alleged violations of Title III of the ADA against TRU and other shopping center store owners/operators and sought declaratory and injunctive relief, as well as attorneys' fees and costs. The FAC identified TRU as "the owner, lessee, and/or operator of the real property and improvements [that] are the subject of this action, to wit: the Property, known as Toys R Us at Hamilton Crossing." Other allegations reflect that the phrase "the Property," as Gaylor utilized it in his FAC, also includes the other named defendants' specific retail stores as well as the shopping center generally.

According to the FAC, Gaylor "visited Defendants' Property numerous times" prior to filing this action, most recently in January 2012. During this January 2012 visit, Gaylor "made a purchase at World Market and browsed several other stores at the shopping center." Gaylor alleged that in April 2012, after filing the action but prior to filing his FAC in June 2012, he "returned to the property to browse and buy goods on the premises." Gaylor further alleged that

"[w]hile at the property, [he] experienced serious difficulty accessing the goods and utilizing the services due to the architectural barriers . . . ." He proceeded to identify specific "barriers to access [that he] personally observed and encountered" during these visits, delineating the alleged violations attributable to each named defendant. With regard to TRU, Gaylor alleged as follows:

> A. Plaintiff had difficulty parking and exiting his vehicle and accessing the designated accessible spaces due to excessive slopes in front of Toys-R-Us.

Gaylor alleged that this barrier and other specific barriers he identified injure him because they prevent or cause him "unequal access when parking his vehicle at the Property, navigating the sidewalks and curb cuts throughout the Property, and attempting to purchase or get service at tenant spaces throughout the Property . . . ." He also alleged that "[r]emoval of the barriers to access located on the Property" is readily achievable without placing an undue burden on Defendants and "would allow [him] to fully utilize the goods and services located therein."

Gaylor further alleged that he "enjoys traveling with his wife" and that "they take frequent road trips to Tennessee." He travels to the Chattanooga area because his sister-in-law resides there and because, as "a history aficionado and former high school teacher," he "enjoys visiting . . . the area museums and Civil war era attractions," as well as "shopping at the local malls and attractions, including Hamilton Place Mall and Hamilton Crossing." Gaylor alleged that he visits the Hamilton Crossing shopping center in particular "because it offers him and his wife a variety of stores that they enjoy." By way of example, Gaylor alleged that he enjoys the coffee and chocolates at World Market and that his wife enjoys the Guitar Center store and Michaels Arts and Crafts store, all of which, in addition to TRU, are located within the Hamilton Crossing Shopping Center.

3

With regard to his intent to return, Gaylor alleged that he "continues to desire to visit the Property, but genuinely fears that he will continue to experience serious difficulty due to the barriers" he identified. He further alleged that he "plans to and will visit the property in the near future to utilize the goods and services offered thereon" and added that he "intends to return to the property at the end of this month on a trip to visit his sister in law." He also alleged that he "additionally intends to return to the Property as an ADA tester" to ascertain whether Defendants removed the barriers to access that he identified.

TRU sought dismissal of Gaylor's FAC under Federal Rule of Civil Procedure 12(b)(1) on the basis that Gaylor lacked standing. TRU alternatively moved for dismissal under Rule 12(b)(6). The district court granted TRU's motion to dismiss on 12(b)(1) grounds, holding that Gaylor lacked standing. The district court premised this determination upon its finding that Gaylor had failed to allege sufficiently that he had visited or intended to return to TRU and that Gaylor had failed to provide factual support for his allegation that he was harmed as a result of the excessive slopes at TRU's store.

## II.

We conduct a *de novo* review of the district court's dismissal of Gaylor's FAC for lack of standing. *In re Carter*, 553 F.3d 979, 984 (6th Cir. 2009) ("Where a district court rules on a 12(b)(1) motion to dismiss that attacks the claim of jurisdiction on its face, this Court reviews the decision *de novo*."). As with a Rule 12(b)(6) motion, we must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir. 1977)).

Article III standing requires a plaintiff to satisfy three key elements: (1) the plaintiff suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) the injury must be "fairly traceable to the challenged action of the defendant"; and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations, internal quotation marks, and citations omitted). At issue in this case is whether Gaylor has sufficiently alleged the injury-in-fact element. In order to demonstrate this element, an individual who, like Gaylor, seeks only injunctive relief, must "show that he is under threat of suffering [an] 'injury in fact.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The "threat" of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Finally, each of the standing elements "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Where, as here, a court evaluates a facial challenge to standing at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" because in considering a motion to dismiss, "we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (alterations and internal quotation marks omitted).

### III.

The parties dispute whether Gaylor's allegations are sufficient to establish either prong of the injury-in-fact element within the context of an ADA Title III claim. We address each prong in turn.

5

A.      **Concrete and Particularized Injury in Fact**

Gaylor has sufficiently alleged an injury that is concrete and particularized. "Particularized" means that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1; *see also Whitmore*, 495 U.S. at 155 ("The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract . . . ." (internal quotation marks and citation omitted)). Gaylor has alleged that he personally observed and encountered an architectural barrier to access in TRU's parking lot in the form of excessive slopes, causing him to experience serious difficulty and depriving him of equal access when parking his vehicle and navigating the property. In addition to his allegations of difficulty, it is reasonable to infer—especially at the pleading stage—that the barriers to accessibility Gaylor encountered would interfere with a mobility-impaired individual's full and equal enjoyment of TRU's property. Thus, Gaylor has sufficiently alleged that he was personally affected.

The district court both incorrectly held that Gaylor was required to provide additional facts to show he was harmed and improperly considered whether the slopes were, in fact, excessive. As discussed above, at the pleadings stage, we must accept Gaylor's plausible allegations of harm as true. *See RMI*, 78 F.3d at 1134. Moreover, whether TRU's slopes actually exceed permissible standards—which is clearly a merits-based inquiry—has no place in our or the district court's standing analysis. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . ."); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 443–44 (6th Cir. 2012) ("[T]he district court is prohibited from making factual findings with respect to a jurisdictional issue when such a finding would adversely affect the merits of the plaintiff's case.").

**B.      Real and Immediate Threat of Prospective Injury**

This Court has not specifically addressed the pleading requirements for demonstration of the requisite threat of future injury within the context of a Title III ADA public accommodation claim for injunctive relief.  But we agree with those circuits that have considered the issue and concluded that a plaintiff demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers.  *See, e.g.*, *Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 188 (2d Cir. 2013); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013); *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 130 (4th Cir. 2012); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157–58 (2d Cir. 2008); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).

Applying these pleading standards here, we conclude that Gaylor's allegations are sufficient to establish a plausible likelihood that he will suffer future harm.  As set forth above, Gaylor defined "the Property" in his FAC to include both the shopping center *and* the named defendants' specific retail stores.  Thus, construing the FAC's references to "the Property" broadly to include TRU's store, Gaylor has alleged both that he intends to return as a patron to TRU's store and that he continues to desire to visit TRU's store, but genuinely fears that he will continue to experience serious difficulty due to the excessive slopes in TRU's parking lot. Gaylor's allegations of intent and desire to return to TRU's property are plausible in light of (1) his alleged history of visiting the Chattanooga, Tennessee area; (2) his allegations that he has visited and attempted to patronize TRU's store "numerous times," most recently in January and

April 2012; (3) his allegations of past injury in TRU's parking lot; (4) his allegations setting forth reasons why he makes regular trips to Chattanooga, Tennessee, and why he particularly enjoys visiting the shopping center in which TRU is located; and (5) his alleged plan to return to the property at the end of the month in connection with a trip to visit his sister-in-law. Accepting these allegations as true for purposes of resolving TRU's motion to dismiss, Gaylor has established the requisite threat of prospective injury to seek injunctive relief against TRU under Title III of the ADA.

## IV.

In sum, accepting the allegations in the FAC as true, with all inferences drawn in Gaylor's favor, we find that he has established an injury in fact that is traceable to TRU and redressable by declaratory judgment or an injunction. We therefore conclude that his FAC demonstrates standing to pursue his ADA Title III claim against TRU. For these reasons, we reverse the district court's holding that Gaylor lacked Article III standing to sue TRU, vacate its judgment, and remand this action for further proceedings.